# EXHIBIT C

CHRISTOPHER C. STARCK

FILED
APR 06 2015
Keith Brin
CIRCUIT CLERK

IN THE CIRCUIT COURT OF THE NINETEENTH JUDICIAL CIRCUIT
LAKE COUNTY, ILLINOIS

| | |
|---|---|
| LAKE COUNTY PUBLIC WATER DISTRICT, a unit of local government,<br><br>Plaintiff,<br><br>v.<br><br>MAXIM CONSTRUCTION CORPORATION, INC., CAMP DRESSER & MCKEE, INC., n/k/a CDM SMITH, INC.<br>THE HANOVER INSURANCE COMPANY and WESTECH ENGINEERING, INC.,<br><br>Defendants. | No. 15 L 262<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

NOW COMES, the Plaintiff, Lake County Public Water District, by and through its attorneys, Trobe, Babowice & Associates, LLC, and for its Complaint against Defendants, Maxim Construction Corporation, Inc., Camp, Dresser & McKee, Inc. n/k/a CDM Smith, Inc., The Hanover Insurance Company, and WesTech Engineering, Inc., hereby alleges as follows:

## COUNT I
### Breach of Contract

1. Plaintiff, Lake County Public Water District ("District"), is a unit of local government organized and existing pursuant to the Illinois Public Water District Act.

2. The District withdraws raw water from Lake Michigan, treats the water in compliance to the requirements of the Safe Drinking Water Act, and provides, at cost, the finished water supply requirements of the City of Zion, the Village of Winthrop Harbor and the State of Illinois marina and park, pursuant to contracts. Part of the water treatment process

**NOTICE**
BY LOCAL RULE 3.12
THIS CASE IS HEREBY SET FOR A SCHEDULING CONFERENCE IN COURTROOM 303 ON 7-16 20 15, AT 9 AM/PM AT 18 NORTH COUNTY STREET, WAUKEGAN, ILLINOIS. FAILURE TO APPEAR MAY RESULT IN THE CASE BEING DISMISSED OR AN ORDER OF DEFAULT BEING ENTERED.

involves use of solid contact units, commonly called clarifiers, to settle out and remove any solid particles in the water being treated. This complaint involves a new clarifier which the District caused to be constructed to meet increased customer demand for finished water.

3. Defendant, Maxim Construction Corporation, Inc. ("Maxim") is a corporation incorporated under the laws of the State of Illinois with its principal place of business located in Volo, Illinois.

4. Defendant, Camp, Dresser & McKee, Inc. n/k/a CDM Smith, Inc. ("CDM"), is an engineering firm and, on information and belief, a corporation doing business in Lake County, Illinois.

5. The Hanover Insurance Company ("Hanover") is, on information and belief, a New Hampshire corporation licensed to issue insurance in Illinois and doing business in Lake County, Illinois.

6. WesTech Engineering, Inc. ("WesTech") is a corporation doing business in Lake County, Illinois.

7. On or about April 17, 2007, Plaintiff and CDM entered into an agreement (the "Engineer Agreement") for inter alia engineering and supervision services for the construction of a clarifier (Clarifier #3) at Plaintiff's facility in Zion, Illinois, for a project known as "Water Treatment Plant Upgrade 6.5 MGD" (the "Project"). A copy of the Engineer Agreement thereto is attached to this Complaint as Group Exhibit "A" and incorporated herein by reference. The Engineer Agreement was the subject of later Amendments thereto related to the Project.

8. On or about April 17, 2007, Plaintiff entered into a contract with Maxim (the "Maxim Contract") as general contractor for construction of the Project. A copy of the Maxim Contract is attached hereto as Exhibit "B" and incorporated herein by reference.

9. Defendant CDM, pursuant to the Engineer Agreement, prepared plans and specifications for the Project (collectively the "Specifications").

10. That Maxim Construction Corporation engaged a supplier, Defendant WesTech, to supply certain components for the aforesaid Lake County Public Water District Zion, Illinois facility.

11. That on information and belief, Defendant, WesTech Engineering, Inc., has been involved in other projects wherein Defendant, CDM, was the engineering firm, and CDM was familiar with WesTech's products.

12. That the aforesaid component provided by the Maxim supplier, WesTech, related to material and equipment for that portion of the contract referred to as the Solids Contact Upflow Clarifier ("Clarifier #3").

13. That the aforesaid Clarifier #3 has as part of its system a portion known as launders and detention hood.

14. That the Specifications for Clarifier #3, including inter alia the launders and detention hood, required that "Materials at the air/water surface interface, shall be corrosion resistant wherever possible." (Specifications, Section 11226, 1.06 A.7.)

15. That the Specifications further provided that, "The annular launder shall be constructed of corrosion resistant materials consisting of a compensation of reinforced fiberglass elements and/or stainless steel framing members." (Specifications, Section 11226 2.10 B.)

16. That the Specifications further state "Miscellaneous Metals are included in Division 5."

17. That the Specifications Division 5 includes "Structural Steel" Section 05120 and "Metal Decking" Section 05310, however, a "Miscellaneous Metals" is absent, although it is

3

referenced again in the "Metal Decking" Section (Specification, Section 05310 1.02 B); and further provided that, "The detention hood shall be constructed of corrosion resistant materials consisting of a combination of fiberglass panels and stainless steel framing members adequately sized to provide a stable and rigid structure resistant to the hydraulic forces present in the tank." (Specifications, Section 11226 2.09A)

18. That the Specifications were silent on which grade of stainless steel Defendant Maxim was to utilize.

19. That the Defendant contractor, Maxim, elected to use the stainless steel set forth in the WesTech shop drawings, specifically 304 L stainless steel.

20. That the shop drawings provided to Maxim Construction Corporation by its supplier, WesTech, on information and belief, were reviewed and approved by Defendant, CDM.

21. That, on information and belief, an important consideration to achieve optimum performance relative to the Project was to choose the correct grade of stainless steel for the chloride content in the water treatment involved, and to delineate the maintenance of that particular grade of stainless steel.

22. That, on information and belief, Maxim, CDM and WesTech were aware that bacterial control and management for the water treatment plant employed by the Plaintiff included water within Clarifier #3 which would contain chlorine content.

23. That on or about October 14, 2011, Defendant Maxim completed its last work on the Project.

24. On or about November 7, 2011, Defendant CDM submitted the final pay application of Defendant Maxim Construction Corporation advising the Plaintiff that it was the

opinion of CDM that Maxim had inter alia satisfactorily completed the work associated with the Project.

25. That substantial corrosion and corrosive pitting occurred and continues to occur within the interior of Clarifier #3, including inter alia on the launders and detention hood.

26. That corrosion is evident and pervasive on the stainless steel components above the water line in Clarifier #3.

27. The corrosive pitting of the Clarifier #3 launders, on information and belief, if left unchecked, will eventually perforate the launder material and will compromise their structural integrity.

28. CDM addressed the corrosion issue by stating to Plaintiff inter alia, that; "CDM recognizes that the unique conditions experienced at LCPWD are not what were anticipated by Lake County Public Water District, CDM, or WesTech. CDM will work with LCPWD and WesTech to find a mutually agreeable resolution of this unanticipated condition."

29. Thereafter, CDM and WesTech suggested efforts in an attempt to solve the corrosion issue including cleaning procedures, testing, passivation, modification of chlorination procurement, modification of chlorination system, and automation of the ventilation system in Clarifier #3. These attempts continued by CDM and WesTech through 2014.

30. It was not until Plaintiff's retention of a third party expert on or about June, 2014, that a definitive answer was obtained as to why corrosion and corrosive pitting on the stainless steel in the interior of Clarifier #3 was and is occurring and how such ongoing corrosion and pitting can be remediated.

31. That Plaintiff is informed that the corrosion and pitting in Clarifier #3 could be alleviated and remediated by providing a barrier coating on the stainless steel.

32. That, on information and belief, the estimated cost to prepare the surface of the launders and detention hood and provide a barrier coating product for the stainless steel in Clarifier #3 ranges upwards of approximately $74,300.00; that over the life of Clarifier #3, the barrier coating product would be expected to be replaced two to three times, or a total of approximately $220,000.00.

33. Defendant CDM owed Plaintiff a duty to exercise reasonable care in the design of Clarifier #3 and in preparation of the Specifications.

34. Defendant CDM was required to exercise the reasonable care, technical skill, ability and diligence ordinarily required of engineers in the same or similar circumstances. Defendant CDM failed to adhere to the accepted standard of care in preparing the plans and specifications for Clarifier #3 and in approving the shop drawings reflecting 304 L stainless steel for use in Clarifier #3.

35. Defendant's acts and omissions in preparing the Plans and Specifications and in approving the 304 L stainless steel for use in Clarifier #3 for Plaintiff was a direct and proximate cause of the damage sustained by Plaintiff and a breach of its obligations under the Engineer Agreement as amended.

36. Plaintiff has fully complied with all obligations and duties to be performed by Plaintiff under the Engineer Agreement as amended.

WHEREFORE, Plaintiff, Lake County Public Water District, respectfully requests this Court for judgment in its favor and against Defendant, Camp, Dresser & McKee, Inc. n/k/a CDM SMITH, Inc., in an amount to be proven at trial but exceeding the sum of $50,000.00, together with its costs and for such other and further relief as this Court deems proper.

## COUNT II
### Breach of Contract

1 - 32. Plaintiff hereby incorporates paragraphs 1 - 32 of Count I of its Complaint as and for paragraphs 1 - 32 of its Count II as if fully set forth herein.

33. Under the Maxim Contract, Maxim had a duty to install and provide a stainless steel interior of Clarifier #3 using Maxim's best skill and attention.

34. Defendant Maxim failed to use its best skill and care in installing the aforesaid stainless steel for the clarifier resulting in a product which is the subject of corrosion.

35. That the specifications for the water treatment plant upgrade contract further provided that Maxim was to provide operating and maintenance instructions to Plaintiff's maintenance personnel. That Maxim did not provide to Plaintiff maintenance instructions relative to the stainless steel and its interaction with chlorine in Clarifier #3.

36. The Specifications further provided in the section, "Products shall be suitable for service conditions." (Specifications Section 01610, Material and Equipment, §1.01A3) That the aforesaid stainless steel was not suitable for service conditions.

37. The Specifications further provided "If there are difficulties in operation of the equipment due to the manufacturer's design or fabrication, additional service shall be provided at no additional cost to the owner. (Specification Section 11226, Solids Contact Upflow Clarifier, §1.03E3)

38. The Specifications further provided:

D. Manufacturer's Guaranty/Warranty

1. The Contractor shall obtain the following guaranty/warranty from the manufacturer of all major pieces of equipment furnished and installed on this Project. Such guaranty/warranty shall be for the benefit of Owner and be furnished in writing by the manufacturer. The Contractor's and manufacturer's obligations under this provision are in addition to other

express or implied warranties under the Contract Documents and under the law and in no way diminish any other right that the Owner may have against the Contractor or manufacturer for faulty material, equipment or work. The warranty period shall not be interpreted as a limitation on the time in which the Owner can enforce such other duties, obligations, rights or remedies.

2. The manufacturer warrants and guarantees for a period of one year from the date of Substantial Completion, or such longer period that may be specified in the Contract Documents, that all materials and equipment furnished and installed shall be free from flaws, defects in material and workmanship and shall be in conformance with the Contract Documents.

[Specifications, Section 0800, Supplementary Conditions of The Specifications SC-619C (D)].

39. That substantial corrosion and corrosive pitting occurred in the interior of Clarifier #3, including inter alia the launders and detention hood.

40. That corrosion is evident and pervasive on the stainless steel components above the water line in Clarifier #3.

41. The corrosive pitting of the Clarifier #3 launders, on information and belief, if left unchecked, will eventually perforate the launder material and will compromise their structural integrity.

42. That Defendant's supplier, WesTech, in December of 2014 advised Plaintiff that it was inter alia refusing to financially assist Plaintiff in remediation of the corrosion and, as a result, Maxim is in breach due to this refusal as an effective warranty has not been provided.

43. As a result of Defendant Maxim's breach, Plaintiff has sustained damage in that Plaintiff will be required to remediate the corrosion in the interior of Clarifier #3 as its expense.

44. Plaintiff has fully complied with all obligations and duties to be performed by Plaintiff under the Maxim Contract.

WHEREFORE, Plaintiff, Lake County Public Water District, respectfully requests this

Court for judgment in its favor and against Defendant, Maxim Construction Corporation, Inc., in an amount to be proven at trial but exceeding the sum of $50,000.00, together with its costs and for such other and further relief as this Court deems proper.

## COUNT III
### Action on Bond

1 - 32.   Plaintiff hereby incorporates paragraphs 1 - 32 of Count I of its Complaint as and for paragraphs 1 – 32 of its Count III as if fully set forth herein.

33 - 44.   Plaintiff hereby incorporates paragraphs 33 - 44 of Count II of its Complaint as and for paragraphs 33 - 44 of its Count III as if fully set forth herein.

45.   That Defendant Maxim provided to Plaintiff a performance bond relative to the performance of its work. (See Exhibit "C" attached hereto.)

46.   That the aforesaid performance bond was issued by Defendant Hanover as surety.

47.   That Defendant Maxim failed to perform in accordance with the Maxim Contract.

48.   That Defendant Hanover, as the surety of Maxim, is responsible for Maxim's aforesaid non-performance pursuant to the aforesaid Maxim Contract.

WHEREFORE, Plaintiff, Lake County Public Water District, respectfully requests this Court for judgment in its favor and against Defendant, Hanover Insurance Company, in an amount as is proven at trial, but exceeding the sum of $50,000.00, together with its costs and for such other and further relief as this Court deems proper.

## COUNT IV
### Action on Warranty

1 – 32.   Plaintiff hereby incorporates paragraphs 1 - 32 of Count I of its Complaint as and for paragraphs 1 - 32 of its Count IV as if fully set forth herein.

33.   That Defendant, WesTech, a foreign corporation, is on information and belief

9

licensed in the State of Illinois, and a supplier of the components for Clarifier #3.

    34. The Specifications for the Project provide:

        D. Manufacturer's Guaranty/Warranty

        1. The Contractor shall obtain the following guaranty/warranty from the manufacturer of all major pieces of equipment furnished and installed on this Project. Such guaranty/warranty shall be for the benefit of Owner and be furnished in writing by the manufacturer. The Contractor's and manufacturer's obligations under this provision are in addition to other express or implied warranties under the Contract Documents and under the law and in no way diminish any other right that the Owner may have against the Contractor or manufacturer for faulty material, equipment or work. The warranty period shall not be interpreted as a limitation on the time in which the Owner can enforce such other duties, obligations, rights or remedies.

        2. The manufacturer warrants and guarantees for a period of one year from the date of Substantial Completion, or such longer period that may be specified in the Contract Documents, that all materials and equipment furnished and installed shall be free from flaws, defects in material and workmanship and shall be in conformance with the Contract Documents.

[Specifications, Section 0800, Supplementary Conditions of The Specifications SC-619C (D)].

    35. That Defendant, WesTech, Inc., on information and belief, provided a warranty for said Clarifier #3 for the benefit of Plaintiff.

    36. That Plaintiff has made a demand to Defendant, WesTech, to monetarily assist it in remediation of the corrosion in Clarifier #3.

    37. That Defendant, WesTech, in December of 2014 refused to financially assist Plaintiff and, therefore, on information and belief, failed to honor its warranty and is in breach thereof.

    38. As a result, Plaintiff has sustained damage.

WHEREFORE, Plaintiff, Lake County Public Water District, respectfully requests this

10

Court for judgment in its favor and against Defendant, WesTech, Inc., in an amount as proven at trial, but exceeding the sum of $50,000.00, together with its costs and for such other and further relief as this Court deems proper.

## COUNT V
**Breach of Express and Implied Warranty of Fitness for Particular Purpose**
Plead in the Alternative

1 – 32. Plaintiff hereby incorporates paragraphs 1 - 32 of Count I of its Complaint as and for paragraphs 1 - 32 of its Count V as if fully set forth herein.

33. The Specifications further provided in the section, "Products shall be suitable for service conditions." (Specifications, Section 01610, Material and Equipment, §1.01A3)

34. That substantial corrosion and corrosive pitting occurred in the interior of Clarifier #3, including *inter alia* the launders.

35. That corrosion is evident and pervasive on the stainless steel components above the water line in Clarifier #3.

36. The corrosive pitting of the Clarifier #3 launders, on information and belief, if left unchecked, will eventually perforate the launder material and will compromise their structural integrity.

37. Plaintiff relied on the skill and judgment and superior knowledge of Maxim and on the express and implied warranties of fitness and suitability for the particular purpose, which purpose was well known to Maxim and for which the above-described stainless steel components for Clarifier #3 were sold as part of the Maxim contract to Plaintiff by Maxim to the damage of Plaintiff.

38. Maxim breached this warranty of fitness for a particular purpose in that Maxim was at all times aware of the purpose for which Plaintiff was contracting the stainless steel

11

components for Clarifier #3 and represented and warranted that the stainless steel components were suitable for that purpose, which representations and warranties were breached by the corrosion and corrosive pitting as set forth above.

39. As a direct and proximate result of Maxim's breach of warranty, Plaintiff has suffered damages.

WHEREFORE, Plaintiff, Lake County Public Water District, respectfully requests this Court for judgment in its favor and against Defendant, Maxim Construction Corporation, Inc., in an amount to be proven at trial but exceeding the sum of $50,000.00, together with its costs and for such other and further relief as this Court deems proper.

Respectfully submitted,
Plaintiff, Lake County Public Water District, by and through its attorneys, Trobe, Babowice & Associates, LLC

By: _____
One of its attorneys

Prepared by:
James J. Babowice (Atty. No. 6180683)
Trobe, Babowice & Associates, LLC
404 West Water Street
Waukegan, Illinois 60085
(847) 625-8700

12