IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WESTFIELD INSURANCE COMPANY ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | |
| -vs- ) | |
| ) | No. 15-CV-09358 |
| MAXIM CONSTRUCTION CORPORATION, INC., ) | Hon. Rebecca R. Pallmeyer |
| the CITY OF CRYSTAL LAKE, ILLINOIS, ) | |
| ENVIROGEN TECHNOLOGIES, INC., and the LAKE ) | |
| COUNTY PUBLIC WATER DISTRICT, ) | |
| ) | |
| *Defendants*. ) | |

**MEMORANDUM OF MAXIM CONSTRUCTION CORPORTION, INC.
IN SUPPORT OF ITS PARTIAL MOTION FOR SUMMARY JUDGMENT
ON THE DUTY TO DEFEND
(FED.R.CIV.P.56)**

MAXIM CONSTRUCTION CORPORATION, INC., ("MAXIM"), by and through its attorneys, CARLSON LAW OFFICES, moves pursuant to FED. R. CIV. P. 56 for partial summary judgment against Plaintiff WESTFIELD INSURANCE COMPANY ("WESTFIELD") on Count I of its most recent pleading, the Complaint for Declaratory Judgment ("CDJ"), which seeks a determination on the duty to defend MAXIM in underlying actions, captioned: *City of Crystal Lake v. Maxim Construction Corporation, Inc., et al.,* Cause No. 15LA199 in The Circuit Court of the 22nd Judicial Circuit McHenry County, Illinois and *Envirogen Technologies Inc. v Maxim Construction Corporation, Inc. et al.*, Cause No. 1:14-cv-02090 in The United States District Court for the Northern District of Illinois, Eastern Division. In support of this Motion, MAXIM states the following:

**INTRODUCTION**

1

In Count I of its CDJ, WESTFIELD seeks a declaration that it has no duty to defend or indemnify MAXIM in an underlying action, captioned *City of Crystal Lake v. Maxim Construction Corporation, Inc., et al.,* Cause No. 15LA199 in The Circuit Court of the 22nd Judicial Circuit McHenry County, Illinois ("*City of Crystal Lake* litigation"). Count II of the CDJ involves an action under the same facts as the *City of Crystal Lake* litigation, an action titled *Envirogen Technologies Inc. v Maxim Construction Corporation, Inc. et al.*, Cause No. 1:14-cv-02090 in The United States District Court for the Northern District of Illinois, Eastern Division ("the Federal Court action"). Although the CDJ does not indicate as much, the City of Crystal Lake has counterclaimed against MAXIM in the Federal Court action but for all intents and purposes, the issues of coverage for Count I and the relevant portions of the case at issue in Count II are identical.[1] Local Rule 56.1 Statement ("56.1 Stmt.") ¶ 12. Count III of the CDJ involves a separate suit against MAXIM that is not at issue in this Motion for Partial Summary Judgment.

The complaint in the *City of Crystal Lake* litigation (Exhibit A to the CDJ, Dkt. #6-1), pleads a cause of action involving construction of a water treatment system, commonly called an ion exchange treatment system ("the system"), installed by MAXIM and its subcontractor Envirogen Technologies, Inc. ("Envirogen") at the City's existing Water Treatment Plant Number 1 ("WTP #1") which conditions water from well number seven ("well No. 7"). 56.1 Stmt. at ¶¶ 3, 5-7.

Specifically, the underlying Complaint alleges that the system is not functional and this lack of functionality, inter alia, has caused the depletion of the City of Crystal Lake's natural resources from the other potable water wells "as a result of the City's inability to

---

[1] The term "underlying Complaint" used herein should be construed to refer to the *City of Crystal Lake* complaint and the relevant portions of the Federal Court action complaint interchangeably.

use WTP #1 to its full and intended capacity." Exhibit A to the CDJ, Dkt. #6-1 at ¶¶ 77c, 77e; 56.1 Stmt. at ¶¶13-14. Additionally, the Complaint pleads shortened life expectancy of the remaining components of the City's water treatment system due to overuse necessitated by the inability to use WTP#1. Exhibit A to the CDJ, Dkt. #6-1 ¶¶77e, 77f, 77g; 56.1 Stmt. at ¶¶ 14-16. Finally, the Complaint alleges the "complete loss" of WTP #1 building and the need to either significantly renovate or demolish the building as it is unusable in its current form due to the malfunction of the system." Exhibit A to the CDJ, Dkt. #6-1 ¶ 77i; 56.1 Stmt. at ¶16. Each of these allegations by the City is a covered "occurrence" and an allegation of "property damage" to work other than that of Maxim. *See Philadelphia Indem. Ins. Co. v. 1801 W. Irving Park, LLC,* 2013 WL 3482260, No. 11 C 1710 (N.D. Ill., August 13, 2012) (Tharp, J.) (attached to this Memorandum as Exhibit 1, Dkt. #35-1). Considering the pleading in the underlying Complaint, WESTFIELD cannot establish that the Complaint excludes all possibility of covered damages, such as would eliminate the duty to defend its named insured MAXIM.

## PROCEDURAL HISTORY

WESTFIELD filed its CDJ on the duties to defend or indemnify against MAXIM, Envirogen, and the City of Crystal Lake on October 22, 2015. Dkt. #1. MAXIM filed its answer to the CDJ on March 15, 2016, and the City answered on March 16. Dkt ## 29, 30. In the CDJ, WESTFIELD states that it issued a policy of commercial general liability ("CGL") insurance, Policy No. TRA 5284060 to MAXIM on September 15, 2010 which was cancelled on January 1, 2011, and then renewed on that same date and annually for the next four years, ultimately expiring on January 1, 2016. Dkt. #1, ¶21.

3

WESTFIELD states three counts, one count for each of three separate suits. Dkt. #1. Count I of the CDJ relates to the *City of Crystal Lake* litigation and is the subject of this Motion for Partial Summary Judgment. Dkt. #1, ¶¶ 26-29. Count II involves a suit by Envirogen against MAXIM for breach of contract over its involvement in supplying the system and is also subject to this Motion. Dkt. #1, ¶¶ 30-33. Count III relates to a project MAXIM performed for a unit of Lake County, Illinois government and has no relation to Counts I and II of the CDJ or to this Motion. Dkt. #1, ¶¶ 34-37.

Counts I and II assert that WESTFIELD declined to defend or indemnify MAXIM because the City of Crystal Lake's Complaint (and the unreferenced cross-claim in the Federal Court action) do not allege an "occurrence" or "property damage" as defined in its policies. Dkt. #1, ¶ 28. WESTFIELD also alleges that MAXIM failed to provide timely notice of the City's claims and cites six exclusions in both the general liability and umbrella portions of its CGL policy that "negates any coverage that might otherwise exist." *Id.* These include exclusions for "contractual liability;" "damage to property;" "damage to your product;" "damage to your work;" "damage to impaired property or property not physically injured;" and "recall of products, work, or impaired property." *Id.*

## ARGUMENT

### I. LEGAL STANDARD

Summary judgment is appropriate if the pleadings, discovery materials on file, disclosures and any affidavits show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P.56. A genuine issue as to material fact exists if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica, Indiana* 259 F.3d 619, 625 (7th Cir. 2001).

## II. DUTY TO INDEMNIFY

This Motion for Summary Judgment involves only WESTFIELD's duty to defend MAXIM in the *City of Crystal Lake* litigation. Judgment upon WESTFIELD's duty to indemnify is not ripe if the declaratory judgment action must be decided prior to the adjudication of the underlying action as the issues to be decided in both actions are substantially similar. *Murphy v. Urso,* 88 Ill.2d 444, 455, 430 N.E.2d 1079 (1981); *Burnett v. Safeco Ins. Co. of Illinois*, 227 Ill. App. 3d 167, 174, 590 N.E.2d 1032 (5th Dist. 1992) ("a declaratory judgment action brought prior to a determination of the insured's liability is premature since the question to be determined is not then ripe for adjudication"); *see also Certain Underwrites at Lloyd's, London v. Boeing Co.*, 385 Ill. App. 3d 23, 42, 895 N.E.2d 940 (Ist Dist. 2008) ("[A] declaratory judgment action brought to determine an insured's duty to indemnify its insured, brought prior to a determination of the insured's liability, is premature since the question to be determined is not ripe before adjudication of the underlying action."), *quoting, Weber v. St. Paul Fire & Marine Ins. Co.,* 251 Ill. App. 3d 371, 373-74, 622 N.E.2d 66 (3d Dist. 1993). *See also, Allianz Ins. Co. v. Guidant Corp.,* 355 Ill. App. 3d 721, 731, 839 N.E.2d 113 (2nd Dist. 2005). There is little doubt that these principles apply here to advise against ruling on WESTFEILD's duty to indemnify at this time.

## III. DUTY TO DEFEND UNDER ILLINOIS LAW

In Illinois, an insurer's duty to defend is much broader than its duty to indemnify. *Outboard Marine Corp. v. Liberty Mut'l. Ins. Co.*, 154 Ill.2d 90, 125, 607 N.E.2d 1204 (1992). An insurer must defend its insured if the underlying complaints "allege facts within or potentially within" coverage, and can refuse to defend only if "it is clear from the face of

5

the underlying complaints that the allegations fail to state facts that bring the case within or potentially within the policy's coverage." *West Bend Mut'l. Ins. Co. v. Mulligan Masonry Co.*, 337 Ill. App. 3d 698, 702, 786 N.E.2d 1078, 1082 (2d Dist. 2003). When the underlying complaint alleges facts within or potentially within the policy's coverage, the insurer's duty to defend arises even if the allegations are groundless, false, or fraudulent. *Ill. Tool Works, Inc. v. Travelers Cas. & Sur. Co.*, 2015 IL App (1st) 132350, at ¶9 (1st Dist. 2015), *citing, Ill. Emcasco Ins. Co. v. Waukegan Steel Sales, Inc.*, 2013 IL App (1st) 120735, at ¶12, 996 N.E.2d 247 (1st Dist. 2013).

In determining whether there is a duty to defend, the court must "look to the allegations in the underlying lawsuit and compare these allegations to the relevant coverage provisions of the insurance policy." *American Family Mut'l. Ins. Co. v. Enright*, 334 Ill. App. 3d 1026, 1030, 781 N.E.2d 394, 396 (2d Dist. 2002). The threshold that the complaint must satisfy to present a claim of potential coverage is low. *LaRotunda v. Royal Globe Ins. Co.,* 87 Ill.App.3d 446, 451 (1st Dist. 1980). Where there is doubt as to coverage, it is to be resolved in favor of the insured. *Id*. The insurer can safely and justifiably refuse to defend only when the allegations clearly show on their face that the claim is beyond policy coverage. *Id*. "Potentially covered" means that the insurers duty to defend its insured arises whenever the allegations in a complaint state a cause of action that gives rise to the possibility of a recovery under the policy; there need not be a probability of recovery. *Tews Funeral Home, Inc. v. Ohio Casualty Ins. Co.*, 832 F.2d 1037, 1042 (7th Cir. 1987). An insurer's duty to defend is triggered by the mere possibility of a covered claim. *Hurst-Rosche Engineers, Inc. v. Commercial Union Ins. Co.*, 51 F.3d 1336, 1344 (7th Cir. 1995).

Additionally, on summary judgment, it is appropriate for the court to examine evidence

beyond the complaint in the underlying action in determining the insurer's duty to defend. *Pekin Ins. Co. v. Wilson*, 237 Ill.2d 446, 459-62, 930 N.E.2d 1011 (2010), *citing, American Economy Ins. Co. v. Holabird & Root*, 382 Ill. App. 3d 1017, 1031-32, 886 N.E.2d 1166 (1st Dist. 2008) ("trial court 'need not wear judicial blinders' and may look beyond the complaint at other evidence appropriate to a motion for summary judgment") and *Fidelity & Cas. Co. of New York v. Envirodyne Eng'rs., Inc.*, 122 Ill. App. 3d 301, 304-05, 461 N.E.2d 471 (1st Dist. 1983) (limiting trial court to review of the complaint would make declaratory proceeding "little more than a useless exercise" and would "greatly" diminish the goal of settling and fixing the rights of the parties).

The Complaints in the underlying *City of Crystal Lake* and Federal Court litigation alleges covered "property damage" caused by an "occurrence."

### IV. THE PLEADINGS IN THE UNDERLYING LAWSUIT ALLEGE "PROPERTY" DAMAGE" CAUSED BY AN "OCCURRENCE"

In the WESTFIELD policies, "property damage" is defined, in part, as "physical injury to tangible property." 56.1 Stmt. at ¶19. There can be no dispute that the underlying Complaint alleges physical injury to tangible property. Specifically, the City alleges "damages to its real property…including but not limited to (a) the complete loss of the existing WTP #1 building…;(b) the need to substantially reconstruct or demolish the modified WTP #1 building…;(c) the shortened life expectancy of the other components of the City water supply and treatment systems…; and (d) the depletion of its water resources from the City's other potable water wells." 56.1 Stmt. at ¶17.

The scope of work awarded to MAXIM was confined to installation of the system within the WTP #1 building. 56.1 Stmt. ¶ 4. The purpose of WTP #1 is to treat water only from City well No. 7, and not "the City's other potable water wells." 56.1 Stmt. ¶ 6.

MAXIM was not hired to build or substantially modify WTP #1 as removal of the existing equipment and installation of the system was to be completed through the existing 45 ½" door opening.  56.1 Stmt. ¶ 4.  Therefore, any damage allegedly caused by MAXIM and Envirogen's work to the other potable water wells or the WTP #1 building was damage that occurred to property other than what was part of MAXIM's own project.

"Occurrence" is defined in the WESTFIELD policies as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  56.1 Stmt. at ¶20.  There are no allegations or indications that MAXIM or its subcontractor Envirogen intended the property damage alleged in the underlying complaint.  Although the underlying Complaint does not allege negligence, MAXIM and Envirogen's actions are merely – and clearly – negligent.  The absence of an express negligence count in the underlying Complaint is irrelevant, "as the question of coverage should not hinge exclusively on the draftsmanship skills or whims of the plaintiff in the underlying action." *Travelers Insurance Co. v. Penda Corp.*, 974 F.2d 823, 827 (7th Cir. 1992).  Additionally, [t]he legal labels used by a plaintiff in the underlying case are not dispositive as to whether a duty to defend exists."  *ProLink Holdings Corp. v. Federal Insurance Co.*, 688 F.3d 828, 831 (7th Cir. 2012).  In *Prisco Serena Sturm Architects, Inc. v. Liberty Mutual Ins. Co.*, 126 F.3d 886, 891 (7th Cir. 1998), the insured was accused of "negligence in uncovering defective work…result[ing] in the incorporation of defective components into the building."  The court held an "occurrence" was alleged, because "carless or negligent oversight of the job" constituted "continuous or repeated exposure to the same general harmful conditions."  *Id*.

8

Because MAXIM's alleged conduct was its failing to install and to cause its subcontractor to install a working system, the performance of its work was "accidental," and an "occurrence" is alleged. As noted by the Court in Illinois' Second Appellate District, a CGL policy " 'does not cover an accident of faulty workmanship but rather faulty workmanship which causes an accident.' *Brochu,* 105 Ill.2d at 498, 86 Ill.Dec. 493, 475 N.E.2d 872, quoting *Weedo v. Stone-E-Brick, Inc.,* 81 N.J. 233, 239-40, 405 A.2d 788, 796 (1979)." *Pekin Ins. Co. v. Richard Marker Associates, Inc.*, 289 Ill. App. 3d 819, 823, 682 N.E.2d 362, 366 (2d Dist. 1997).

In *Richard Marker*, the court held that an "occurrence" was sufficiently alleged where there were allegations of damage to property other than the insured's work. *Id*. The City's underlying Complaint alleges damage to property other than MAXIM's own work. 56.1 Stmt. ¶¶ 14 – 17.

Instructively, in a case in the United States District Court for the Northern District of Illinois captioned *Westfield Insurance Company v. National Decorating Service, Inc., et al*, 1:14-cv-01572 (Nov. 25, 2015) (attached as Exhibit 2; Dkt. #35-2) ("*National Decorating*"), the faulty work of a subcontractor hired to paint the walls in a new condominium building (National Decorating) was alleged to have damaged the work of other trades and the personal property of condominium unit owners. *Id.* Citing essentially the same policy language as in the instant case, WESTFIELD denied coverage to National Decorating and their named additional insureds. *Id.* Judge John Robert Blakey held that when damage by a contractor is alleged, the Court must examine the scope of work of the named insured when determining if there is "property damage" resulting from an "occurrence." *Id*. In doing so, Judge Blakey held that controlling case law cited in the *National Decorating* decorating decision, Westfield's CGL policy language, along with the "purpose behind CGL insurance, compels this Court's conclusion that damage beyond

9

the scope of the named insured's work at a building is 'property damage' resulting from an 'occurrence.'" *Id*.

The *National Decorating* decision cited the case of *Ohio Casualty Insurance Co.* v. *Bazzi Construction Co, Inc.*, 815 F.2d 1146 (7th Cir. 1987) as influencing its reasoning. In *Bazzi*, the named insured, a general contractor, was hired to remodel a garage, a project that included adding a second story to the existing garage structure. *Id.* at 1146-47. The work performed by the contractor compromised the structural integrity of the existing garage. *Id.* at 1147-48. The owner of the garage sought damages for having to reinforce the garage's steel joists and columns and for demolishing and rebuilding the new second floor. *Id*. In finding that the insurer owed a duty to defend the named insured, the Seventh Circuit emphasized the limited scope of work performed by the insured. *Id*. at 1148-49.

Despite the fact that the named insured worked on part of the garage, because the owner's complaint alleged damages beyond the name insured's scope of work, the Seventh Circuit found a duty to defend. *Id*. at 1148. The Seventh Circuit noted in comparison that if the named insured's scope of work was to construct an entirely new garage, damages to any part of it would not be covered. *Id*. at 1148-49. Similarly, MAXIM was not hired to construct an entirely new water treatment system for the City, nor was it hired to even construct a new WTP #1 building – it was hired to merely remove and replace one small component of the City's water treatment system serving only one of the City's many water wells. 56.1 Stmt. ¶ 6. As the *National Decorating* Court noted, in a hypothetical case where a contractor was hired to construct an entire garage – or an entirely new water treatment system – the damages "would have fallen within the scope of the named insured's work – the entire garage. That was not the case in *Bazzi Construction*, nor is it the case here." *National Decorating* at Page 11.

The *National Decorating* Court also cited the case of *Milwaukee Mutual Insurance Co. v. J.P. Larsen, Inc.*, 956 N.E.2d 524, 532 (Ill. App. Ct. 2011) when it noted that the Illinois Appellate Court "based its survey of Illinois law (including *Viking Construction* and other cases cited by Westfield Insurance), with the principal that "damage to something other than the project itself *does* constitute an 'occurrence' under a CGL policy… (emphasis in original). *National Decorating* at Page 12. *J.P. Larsen* involved a case where a named insured, in this instance a subcontractor, applied window sealant in a faulty manner, ultimately leading to water infiltration and water damage to personal property in the building and water damage "throughout a building not constructed by [the named insured]." *J.P. Larsen*, 956 N.E.2d at 532. As in the case at bar, as in *National Decorating*, as in *Bazzi Construction*, and as in *J.P. Larsen*, "there was more than just an allegation of damage to the [named insured's] defective work. *Id.*" *National Decorating* at Page 11.

In *National Decorating*, WESTFIELD argued that the underlying complaint did not allege damage to something other than the project itself – an argument that Judge Blakey rejected with his "scope of work" reasoning. *National Decorating*. Here, should WESTFILED make a similar argument, this Court must likewise reject its reasoning. The City of Crystal Lake in its underlying Complaint clearly and unequivocally alleges damages to its property beyond the scope of the work performed by MAXIM and Envirogen. 56.1 Stmt. ¶¶ 14 - 17. The City alleges damages to, and complete loss of use of, the WTP #1 building, a building it did not hire MAXIM to modify. 56.1 Stmt. ¶ 17. Like the ill-fated garage in *Bazzi*, when a named insured causes damage to a pre-existing building outside of its scope of work, allegations of covered "property damage" caused by an "occurrence" are sufficient to trigger the duty to defend. Similarly, like the damage to the personal property of condominium owners in *J.P. Larsen* and

*National Decorating*, allegations of damage to the City's natural resources, its other water wells, and other components of the water treatment system outside of MAXIM's scope of work are sufficient to trigger coverage.

Finally, it is instructive to consider the purpose of CGL insurance when considering MAXIM's claims for coverage to alleged damage to property outside of its own scope of work. As Judge Blakey noted in *National Decorating*, "CGL insurance is meant to protect the policy holder from liability for damage to the property of others. As such, the Court found coverage for damage beyond the scope of work of the named insured…" *National Decorating* at Page 14 (internal citations omitted).

### V. THE ALLEGATIONS OF LOSS OF USE OF WELL No. 7 AND THE ENVIROGEN SYSTEM ARE SUFFICIENT TO INDEPNEDNTLY TRIGGER A DUTY TO DEFEND FOR COVERED "PROPERTY DAMAGE"

The WESTFIELD policy defines "property damage," in part, as "injury to tangible property, including all resulting loss of use of that property." 56.1 Stmt. ¶ 19. The city's underlying Complaint alleges that it has lost the use of its municipal water well No. 7 as a result of the defective Envirogen system installed by MAXIM. 56.1 Stmt. ¶¶ 14,15. This allegation, standing alone, is enough to trigger the duty to defend, even without the prior arguments.

Loss of use, in a policy that defines damage to property as including loss of use, is sufficient to trigger the duty to defend. In *Bazzi*, 815 F.2d 1146, 1148, the Seventh Circuit agreed with the reasoning of the District Court when it held that, because the complaint alleged that the existing garage was made unusable by the negligent conduct of Bazzi, sufficient facts were alleged to trigger the duty to defend by itself. *Id*. A case that cited *Bazzi, Gibraltar Cas. Co. v. Sargent & Lundy*, 214 Ill. App. 3d 768, 781, 574 N.E.2d 664, 671-72 (1st Dist. 1990),

involved allegations of loss of use of an atomic power plant due to design deficiencies by the insured designer, *Sargent & Lundy*. The policy at issue, like the WESTFIELD policy, defined property damage, in part, as loss of use. *Id*. at 778. The *Sargent & Lundy* court held that because loss of use damages were alleged, the insurer had a duty to defend its insured. *Id.*

In its underlying Complaint, the City also alleges that it bears costs due to the loss of use of the defective Envirogen system. 56.1 Stmt. ¶ 13. The *Sargent & Lundy* court held that loss of use damages include the costs of correcting the defect. 214 Ill.App.3d 768, 781.

The City also alleges that loss of use of well No. 7 causes strain on its entire potable water system which the City is forced to operate at a diminished capacity. 56.1 Stmt. ¶¶ 14, 15. The *Sargent & Lundy* court supported its holding that there are loss of use damages when there is a temporary inability to use property by citing a 7th Circuit case (applying Wisconsin law), *Am. Motorists Ins. Co. v. Trane Co.*, 718 F.2d 842, 844 (7th Cir. 1983), where an operator of a natural gas liquefaction plant was forced to operate at a diminished capacity due to the failure of defective equipment. 214 Ill.App.3d 768, 781. The *Trane Co*. court held that diminished capacity is a physical infirmity that, when alleged, indicate potential damage to property by loss of use. 718 F.2d 842, 844.

Under the foregoing, because the underlying Complaint alleges loss of use of well No. 7, costs to repair and correct MAXIM's alleged defects, and diminished capacity of the City's potable water system, of which the defective Envirogen system was designed to be an integral part, property damage is sufficiently alleged to trigger the duty to defend.

VI. **THE ALLEGED "PROPERTY DAMAGE" DURING AT LEAST ONE WESTFIELD POLICY PERIOD IS ALLEGED**

The WESTFIELD polices require that covered "property damage" take place during the policy period. WESTFIELD had coverage in place from September 10, 2010 until January 1,

2016. 56.1 Stmt. ¶ 2. The project commenced in November, 2010. 56.1 Stmt. ¶ 7. The City of Crystal Lake filed the underlying Complaint alleging damage to its property on June 25, 2015. Dkt. #1. Therefore, that the alleged "property damage" took place during at least one WESTFIELD policy is sufficiently alleged to trigger the duty to defend.

### VII. WESTFIELD'S CITED EXCLUSIONS DO NOT BAR A DUTY TO DEFEND

Coverage for the alleged damage to the property of the City is not barred by any of the exclusions cited by WESTFIELD. First, the "Liability Assumed by Contract Exclusion" is expressly an exclusion for indemnification provisions – it is not a generic exclusion for breach of contract claims. *See generally American Family Mut. Ins. Co. v. Fisher Development Inc.*, 391 Ill.App.3d 521 (1st Dist. 2009); *Willet Truck Leasing Co. v. Liberty Mut. Ins. Co.*, 88 Ill.App.3d 133 (1st Dist. 1980). Moreover, the nature of the allegations against MAXIM are in negligence, not contract, as discussed supra.

Next, exclusions for "damage to property," "damage to your product," "damage to your work," and "recall of products, work, or impaired property" are insufficient to bar potential coverage, because there are allegations of damage to property other than the work of MAXIM. In *Pekin Insurance Co. v. Miller*, 367 Ill.App.3d 263 (1st Dist. 2006), the court considered whether similar exclusions applied where the insured tree cutter had cut trees on the wrong property. First, the court held that there was an "occurrence" even though the insured had intentionally cut the trees he cut, because he had been mistaken as to the property he was working on. *Id*. at 266. Second, the court examined the "business risk" exclusions. The court held the term "your work" was ambiguous. *Id*. as 271. In this case, whatever the precise meaning of "your work," there are clearly allegations of damage to property other than MAXIM's work. Therefore, the duty to defend is triggered, the "business risk" exclusions

14

notwithstanding.

Finally, the exclusion for "damage to impaired property or property not physically injured" does not bar potential coverage because the City's underlying Complaint alleges physical injury to the WTP #1 building. 56.1 Stmt. ¶17.

As to all of the exclusions cited, and each of them, the applicability must be clear and unambiguous. The *Sargent & Lundy* court noted that "[i]f an exclusion clause is relied upon to deny coverage, its applicability must be clear and free from doubt at the time the insurer is requested to defend because any doubts as to coverage will be resolved in the insured's favor." (*Insurance Co. of Illinois,* 188 Ill.App.3d at 662, 136 Ill.Dec. 307, 544 N.E.2d 1082.) 214 Ill. App. 3d 768, 787. Because there are, at a minimum, substantial and legitimate doubts as to the applicability of the WESTFIELD exclusions, such exclusions cannot be relied upon to deny a duty to defend.

## CONCLUSION

The pleadings in the underlying Complaint are sufficient to trigger a duty to defend under the WESTFIELD policies for MAXIM. Because there is no issue of fact that WESTFIELD owes a duty to defend, partial summary judgment should be granted in favor of the the defendants.

WHEREFORE, the Defendant, MAXIM CONSTRCUTION CORPORATION, INC., respectfully requests that this Honorable Court rule that Plaintiff WESTIFLED INSURANCE COMPANY has a duty to defend it against the allegations made against it in the matters captioned *City of Crystal Lake v. Maxim Construction Corporation, Inc., et al.,* Cause No. 15LA199 in The Circuit Court of the 22nd Judicial Circuit McHenry County, Illinois and *Envirogen Technologies Inc. v Maxim Construction Corporation, Inc. et al.*, Cause No. 1:14-cv-

02090 in The United States District Court for the Northern District of Illinois, Eastern Division. MAXIM CONSTRCUTION CORPORATION, INC. also requests that this Court enter judgement against WESTFIELD for the amount of its defense cost incurred from the date of tender of this matter to WESTFIELD.

June 8, 2016

                                        Respectfully submitted,
                                        CARLSON LAW OFFICES

                                        By: /s/ Keith G. Carlson

Keith G. Carlson (6194752)
Carlson Law Offices
2 N. LaSalle St. Suite 1800
Chicago, IL 60602
Tel:   (312) 627-1212
Fax:  (312) 265-8427
keith@carlson-law-offices.com
Attorneys for Defendant Maxim Construction Company, Inc.